IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| ANGELA ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:11-CV-3947-KOB |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The claimant, Angela Roberts, brings this action pursuant to the provisions of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her application for Social Security Benefits.  Claimant timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether substantial evidence supports the decision of the Commissioner and whether the ALJ applied proper legal standards.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end, this court "must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." Bloodsworth, 703 F.2d at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 F.2d at 1239. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if substantial evidence supports the decision. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, supbt. P, app. I?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In the present case the ALJ determined the claimant met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the claimant was able to perform her past relevant work as a housekeeper and a production assembler. Accordingly she found the claimant not disabled at Step Four.

## DISCUSSION

The claimant was thirty-five years old at the time of the ALJ's decision. She has a ninth grade education and past work experience as a fast food worker, a housekeeper, a brazer, a cashier, and a production assembler. R. 77. The claimant alleges she is disabled because of various mental impairments, including bipolar disorder,

obsessive compulsive disorder, panic disorder and anxiety.[1]  R. 162.  The ALJ found the claimant had the residual functional capacity (RFC) to perform the exertional demands of light work with occasional interaction with supervisors, co-workers, and the general public.  R. 18.  Relying on the testimony of a vocational expert (VE), the ALJ found the claimant was able to perform her past relevant work as a housekeeper and a production assembler. R. 22-23, 78.  Accordingly, she found the claimant was not disabled.

       The claimant argues the ALJ erred in failing to explain her reasons for not crediting the opinion of Dr. Estock, the state agency non-examining psychological consultant.[2]  (Pl.'s Br. at 2-6).  Although an ALJ is not bound by the findings of state agency medical consultants, they are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if supported by the evidence in the record.  20 C.F.R. §§ 404.1527(e)(2)(i).  In the present case the ALJ did not ignore or reject Dr. Estock's opinion.  Instead, she gave "considerable weight" to Dr. Estock's opinion.  R. 21.  The ALJ noted Dr. Estock "opined the claimant would have only mild to

---

[1] The claimant does not argue on appeal that the ALJ's physical RFC finding was not supported by substantial evidence.  Therefore, the court will not address in detail the claimant's physical impairments.  However, a review of the record reveals that substantial evidence supports the ALJ's finding that the claimant was able to perform unskilled light work.

[2] The claimant does not explain in detail why she believes Dr. Estock's opinions render her disabled.  The court will nevertheless address those portions of Dr. Estock's opinion relating to the ALJ's RFC finding.  The court notes, however, a typographical error in Dr. Estock's statement that the claimant "[m]ay miss 11-2 days per month due to psychological [symptoms]."  R. 289.  It seems clear Dr. Estock meant "1-2 days" and the claimant does not argue otherwise.

moderate limitations" from her mental impairments. R.21. Dr. Estock's finding of only mild to moderate limitations supports the ALJ's RFC finding.

Although the ALJ did not adopt Dr. Estock's opinion verbatim, her RFC finding included similar limitations in the areas in which Dr. Estock indicated the claimant was restricted. Dr. Estock's RFC opinion stated the claimant would need a "[w]ell spaced work environment," "[s]upportive supervisory feedback," and "[f]ew familiar coworkers." The ALJ limited the claimant to "occasional interaction with supervisors, co-workers, and the general public." R. 289. Therefore, Dr. Estock's RFC opinion does not greatly differ from the ALJ's RFC finding.

Dr. Estock's RFC opinion also supports the ALJ's determination that the claimant could return to her past relevant work. The ALJ found the claimant could perform her past work as a production assembler based upon the testimony of a vocational expert (VE). R. 78. The ALJ's question to the VE assumed the claimant would be "limited to occasional interaction with supervisors, coworkers, or the general public." R. 78. The VE testified that with those mental restrictions the claimant would be able to perform her past work as a production assembler. R. 78. Dr. Estock's RFC opinion stated the claimant "[w]ould work well in a job requiring repetitive, rote function." R. 289. In the Consultant's Notes portion of his report, Dr. Estock observed that the claimant had "worked in a production position in the past for several years, and it appears her compulsion to perform a task repeatedly would fit this work criteria, with

minimal contact with others and supportive feedback." R. 285. These opinions from Dr. Estock support the ALJ's finding that the claimant would be able to perform her past work as a production assembler in spite of her mental impairments.

The claimant also argues on appeal the ALJ erred in failing to find the claimant suffered from reduced intellectual functioning. This argument is based upon the report of Dr. Crowder, the consultative psychologist who examined the claimant. R. 265. Dr. Crowder reported the claimant's "[e]stimated intelligence is within the borderline to low average range." R. 267. The claimant argues that because the claimant's intellectual functioning might have been in the borderline range, cognitive testing should have been performed, either by Dr. Crowder or another consultative examiner. Pl.'s Br. at 7-8.

Although the ALJ did not specifically mention Dr. Crowder's estimate of the claimant's intellectual functioning in her opinion, her decision shows that she considered the claimant's medical condition as a whole, including her mental limitations. See, Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (holding an ALJ is not required to specifically refer to every piece of evidence so long as the opinion shows the claimant's medical condition as a whole was considered). Moreover, the mere diagnosis of borderline to low average intellectual functioning, without proof of any functional limitations imposed by that condition, is insufficient to prove disability. See, Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987) (the mere diagnosis of polymyalgia rheumatica says nothing about why the condition makes it impossible for the claimant to be gainfully

employed); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

In the present case, Dr. Crowder gave his opinion as to the limitations the claimant would have from her mental impairments.  He opined the claimant had moderate limitations in her ability to relate to others, no constriction of interest, and no restriction of daily activities based on her mental condition alone. R. 267.  Dr. Crowder further opined the claimant had a good ability to understand, carry out, and remember instructions, and a fair ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting.  R 267.  He assessed the claimant's GAF as 65, indicating the claimant had only mild symptoms from her mental impairments.[3]  Dr. Crowder reported no indication of a high level of generalized anxiety, and no indication of a severe mood disturbance.  R. 267.  Dr. Crowder opined the claimant appeared to have some mania, was impulsive, was quick to take offense, and was quick to anger.  R. 267.

---

[3] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV").  A GAF of 61-70 is defined as some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. DSM-IV-TR, 34.

The ALJ gave considerable weight to the opinions of Dr. Crowder, which provide substantial evidence to support his RFC finding.

The claimant's final argument is that the ALJ should have ordered an additional consultative evaluation to determine the extent of the claimant's intellectual functioning. The regulations provide that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." 20 C.F.R. § 404.1519a(b), 416.919c(b). Thus, the regulations only require a consultative examination only when necessary information is not in the record and cannot be obtained from a claimant's treating medical sources or other medical sources. In the present case, however, the record contains numerous mental health treatment records, a consultative examination, and opinion evidence from the nonexamining psychological consultant. In addition, Dr. Crowder gave an opinion as to the claimant's intellectual functioning, and also an opinion as to how her mental impairments affected her ability to work. The evidence in the record was sufficient for the ALJ to make an informed decision. Therefore, the claimant has not shown than an additional consultative examination was necessary.

In addition to the evidence supporting the ALJ's decision discussed above, the ALJ relied upon the claimant's sparse treatment history, failure to comply with medication therapy, and lack of treatment notes supporting her alleged mental limitations to determine the claimant's mental impairments were not disabling. In her decision, the

ALJ pointed out the claimant received sporadic treatment at River Bend Center for Mental Health from 1998 through 2009, with gaps of several years with no treatment. R. 9-20, 305-49. The ALJ observed that when the claimant took her medications, her symptoms improved. R. 21. The ALJ specifically noted that in August 2009 the claimant reported that she was doing fairly well while taking her medications. R. 21, 370. The ALJ also noted the GAF assessment of 55 given by her treating psychiatrist on May 26, 2009, indicating only moderate mental symptoms.[4] R. 20. The ALJ found the claimant's ability to adopt children was inconsistent with the claimant's reported psychological limitations. R. 22.

The ALJ remarked on the lack of evidence supporting the claimant's alleged physical limitations. R. 22. She found that although sporadic notations in the treatment records concerned the claimant's physical impairments, "evidence of significant treatment or limitations which impacted her functioning has not been found." R. 22. Despite the lack of supporting medical evidence, the ALJ limited the claimant to a light level of exertional activity. R. 22. A review of the medical evidence shows the ALJ's findings as to the claimant's physical limitations are supported by substantial evidence. Treatment records for the claimant's alleged physical impairments are sparse, and do not indicate a significant level of impairment resulting from those impairments.

---

[4] A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

## CONCLUSION

The claimant's arguments on appeal lack merit. Dr. Estock's opinion is not at odds with the ALJ's RFC finding. To the contrary, his opinions support the ALJ's decision. Likewise, Dr. Crowder's estimation that the claimant was functioning within the borderline to low average range of intellectual functioning does not establish she has limitations in excess of those found by the ALJ. Nor has the claimant shown that additional consultative examinations were needed for the ALJ to render an informed decision. In fact, Dr. Crowder's opinions as to the vocational impact of the claimant's mental symptoms provide substantial evidence to support the ALJ's finding of no more than moderate mental limitations. The claimant's sparse treatment, failure to comply with medication therapy, and lack of treatment notes supporting her alleged mental limitations also support the ALJ's findings as to the claimant's mental restrictions.

The claimant does not argue on appeal that the ALJ's physical RFC finding was in error. In any event, a review of the medical records shows sparse treatment for the claimant's physical problems and does not indicate a level of physical impairment that would prevent light work.

For the above reasons the court finds the ALJ's decision is supported by substantial evidence and that proper legal standards were applied. Accordingly, the court must affirm the decision of the Commissioner. The court will enter an appropriate order contemporaneously with this opinion.

DONE and ORDERED this 30th day of September, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE